IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| Alex J. Mitchell, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | COMPLAINT |
| ) | (Jury Trial Demanded) |
| BMW of North America, LLC, Durr ) | |
| Systems, Inc. & Tzumi Electronics, LLC, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

The Plaintiff, complaining of the Defendants herein, would respectfully show unto this court that:

**<u>PARTIES</u>**

1. That the Plaintiff is a citizen and resident of the County of Greenville, State of South Carolina.

2. Upon information and belief, the Defendant, BMW of North America, LLC, (BMW), is a Corporation organized under the laws of the state of Delaware and transacts business in the State of South Carolina, County of Greenville.

3. Upon information and belief, the Defendant, Durr Systems, Inc., (Durr), is a Corporation organized under the laws of the state of Michigan and transacts business in the State of South Carolina, County of Greenville.

4. Upon information and belief, the Defendant, Tzumi Electronics, LLC, (Tzumi), is a Corporation organized under the laws of the state of New York and transacts business in the State of

South Carolina, County of Greenville.

## JURISDICTION AND VENUE

5.      This court has jurisdiction over this case pursuant to the provisions of 28 U.S.C. Section 1332 (a).

6.      Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b)(2), as a substantial portion of the events described took place in this district.

## GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

7.      This action is brought as a result of serious injuries sustained by the Plaintiff while he cleaned a dangerously defective suspension chain conveyor that was, at all relevant times mentioned, the subject machine which caused the Plaintiff's injuries and damages.

8.      The incident giving rise to this action took place on April 2, 2017. At all relevant times subject machinery lacked guards and/or any other safety device and/or feature **at or around the machine's drive shaft**, and also lacked warnings regarding the dangers posed by its lack of guards or other safety devices. The Plaintiff is informed and believes that the suspension chain conveyor was designed, manufactured, marketed and distributed by Defendant Durr, with knowledge that the conveyor apparatus would be cleaned in the manner used by the Plaintiff.

9.      At all times relevant to the Complaint, the Plaintiff was an employee of Crown Services, Inc., contracted to perform industrial cleaning services on behalf of MPW at Defendant BMW's Spartanburg, South Carolina plant. Specifically, the Plaintiff was to conduct cryogenic blasting of the suspension chain conveyors designed, manufactured, marketed and distributed by Defendant Durr. At all relevant times, it is believed Defendant BMW owned, installed, serviced, tested, inspected, maintained, **modified, changed,** and furnished the subject suspension chain conveyor for use by persons charged with performing cleaning services at its facility, to include the Plaintiff.

10.     At no time did Defendant Durr or Defendant BMW inform the Plaintiff about the dangers associated with operating or cleaning the subject machine while it was dangerously unguarded **at or around the machine's drive shaft.**

11.     At all times relevant to the Complaint, the Plaintiff had on his person a cell phone charger designed, manufactured, marketed and distributed by Defendant Tzumi.

12.     Due to its size and strength, the subject machinery is difficult to stop while it is in its sequence of operation.  Plaintiff is informed and believes and therefore alleges that without the installation of guards or other safety features **at or around the machine's drive shaft**, and/or by altering said machinery so as to expose persons to the unguarded conveyors, those cleaning the machine, such as the Plaintiff, are susceptible to a very high probability of extremely serious injuries.  The Plaintiff is further informed and believes and therefore alleges that Defendant Durr and BMW had actual knowledge, must have known, should have known, or had reason to know of the foregoing dangerous propensities of the subject suspension chain conveyors.

13.     On the date mentioned, the Plaintiff, while engaged in the cleaning operation of the conveyor apparatus, was cleaning the machine in the only manner possible in light of its design and/or construction, and/or its location.  Specially, the Plaintiff was working in the enclosed e-coat wet strip-out booth where the conveyors are housed.

14.     On this date, the Plaintiff was the employee tasked with being in the enclosure with the **unguarded** conveyors doing the actual cryogenic blasting, i.e. the cleaning procedure.  The Plaintiff's co-worker is supposed to be a safety watch and closely monitor the Plaintiff's safety with the ability to shut off the individual conveyors in an emergency.   The employee monitoring the individual doing the cryogenic blasting has to continually depress the button on the control panel in order for the conveyors to operate in manual mode.

15.     On the conveyors the Plaintiff was cleaning at the time of his accident, the control

panel had been reprogrammed by Defendant BMW to allow the suspension chain conveyors to run continually in manual mode without someone having to hold down the button. The conveyors would run continually until an E-stop button was pressed. It was felt by Defendant BMW's management that in order to more easily and thoroughly clean the conveyors it was best that they be running while they were being cleaned. During normal operating hours, BMW actually forbade its "employees" to enter the enclosure containing the suspension chain conveyors while they were running.

16. Again, there is no guarding on the conveyors and shafts. It must be assumed thus that Defendant Durr relied solely on individuals remaining behind the glass enclosure during operating hours as its safety mechanism to guard against individuals from encountering the potentially dangerous machinery.

17. Sometime shortly after 11:00 a.m., the co-worker left the Plaintiff alone in the enclosure with the conveyors running and no one monitoring his safety. At approximately 11:15 a.m., the Plaintiff finished cryogenic blasting the last suspension chain conveyor. The enclosure that the Plaintiff was in is very hot and humid. After a period of patiently waiting the Plaintiff Alex decided TO attempt to exit the enclosure. Upon laying his blasting jet nozzle and hose down, the spinning drive shaft pulled the Plaintiff tightly against it and began spinning him around and around, resulting in serious injury.

18. The cell phone charger manufactured by Tzumi, because of its defective design and/or manufacturing, then exploded and caught his clothing on fire and eventually caused third degree burns over a significant portion of his body. As the Plaintiff's clothing and skin burned, resulting in additional and collateral damage, he became disentangled from the driveshaft and fell to the ground devastatingly injured. Thus, the defective Tzumi cell phone charger was also a substantial factor in causing the Plaintiff's injuries.

19. At all times relevant, Defendant Durr had actual knowledge, should have known or must have known of probable injurious consequences of its conduct in defectively designing, manufacturing and distributing of the subject suspension chain conveyor that was at all times defectively unguarded and unsafe **at or around the machine's drive shaft**. At all relevant times Defendant Durr intentionally and deliberately failed to remedy or make safe the defective design of the subject suspension chain conveyer as alleged.

20. Moreover, Defendant Durr, by and through it its managing agents and employees, authorized and ratified the defective design, manufacture and distribution of the defectively designed subject suspension chain conveyor, while the subject suspension chain conveyor remained under their control and possession. Furthermore, Defendant Durr intentionally and deliberately failed to warn the general public, consumers and the Plaintiff of the subject suspension chain conveyor's defectively dangerous unguarded and unsafe **condition**.

21. At all times relevant, Defendant BMW had actual knowledge, must have known, should have known or had reason to know of the unreasonably dangerous condition posed by the unguarded and unsafe suspension chain conveyor. Despite Defendant BMW's knowledge of the dangerous condition of the subject machine, it deliberately failed to incorporate any safety measures and/or warnings that would have minimized or eliminated the subject machine's unreasonably dangerous propensities. Moreover, at the expense of the Plaintiff's health and safety, as alleged, Defendant BMW, by and through its managing agents and employees, knowingly, and wrongly, authorized the purchase, installation, maintenance, inspection, servicing, modification, remanufacturing and furnishing for use by its employees, including the Plaintiff, of the defectively dangerous suspension chain conveyor. Further, Defendant BMW modified the subject machine, thereby circumventing any potential safety feature of the subject machine and/or adding to its inherently defective and dangerous condition.

22. Furthermore, at the expense of the Plaintiff's health and safety, as alleged, BMW, by and through its managing agents and employees, authorized and ratified the purchase, distribution, modifications, changes and remanufacturing of the subject suspension chain conveyor including to allow the subject machine to be modified such that the conveyors could run continuously in manual mode.

23. Plaintiff is informed and believes and therefore alleges that had the subject suspension chain conveyor been equipped with a safety guard and/or other safety feature **at or around the machine's drive shaft**, the Plaintiff would not have been pulled into the spinning drive shaft and the injuries complained of herein would not have occurred.

24. The Plaintiff is further informed, believes and therefore alleges that had there been warning labels affixed to the machine, or had BMW warned the Plaintiff of the dangers posed by the machine's unguarded, unsafe **design**, the Plaintiff would not have sustained the injuries complained of here.

25. As a direct and proximate cause of the negligence of Defendant BMW and the negligence, breaches of warranty and strict liability in tort of Defendants Durr and Tzumi, individually and/or collectively, the Plaintiff sustained severe and permanent injuries and damages. He has required and will require extensive hospital and medical care and treatment. He has incurred and will continue to incur substantial expense for medical treatment. He was disabled for a period of time and has sustained permanent injury. His health and ability to use the injured body parts, ability to engage in usual activities, ability to work and earn income and ability to enjoy life have been permanently and adversely affected.

**FOR A FIRST CAUSE OF ACTION**
**(NEGLIGENCE)**
**AS TO ALL DEFENDANTS**

26. The Plaintiff would reallege and repeat paragraphs 1 thought 25 as though fully

set forth herein verbatim and would further allege:

27. The Defendant BMW, by and through its agents and employees, had a duty to provide a safe work environment for those individuals it contracted to clean its suspension chain conveyors.

28. The Defendant BMW had actual knowledge, must have known, should have known or had reason to know that due to the subject suspension chain conveyor's size and strength, it was difficult to stop in its sequence of operation and that without installation of guards and/or other safety features **in or around the machine's drive shaft** that the individual cleaning the machine, such as the Plaintiff, is susceptible to a very high probability of serious injuries.

29. The Defendant BMW, by and through its agents and employees, breached its duty by recklessly and wantonly exposing the Plaintiff to a dangerously unsafe suspension chain conveyor that lacked a safety guard.

30. Furthermore, the Defendant BMW, by and through it agents and employees, substantially altered the machine such that the suspension chain conveyors could run continuously without an individual holding down the power button, thereby exposing the Plaintiff to the unguarded drive shaft while the conveyors were continuously running, which exposed the Plaintiff to great risk of harm and ultimately leading to the Plaintiff being pulled into the drive shaft.

31. As a direct and proximate result the Defendant BMW, by and through its agents' and employee's gross negligence, recklessness and carelessness as alleged, the Plaintiff was pulled into the dangerously unsafe, unguarded suspension chain conveyor's drive shaft and suffered significant injury and damages.

32. The Defendants Durr and Tzumi each had a duty to exercise reasonable care to design, test, manufacture and sell a reasonably safe suspension chain conveyor and cell phone charger, respectively, so as not to subject the ultimate consumer to unreasonable risk.

33. The Defendants Durr and Tzumi were negligent, grossly negligent, and wanton in the design, manufacture, construction, assembly, distribution and sale of their respective product in all of the following respects generally:

(a) By designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying its product in such a way that persons using it would be subjected to unreasonable danger;

(b) By failing to test its product to insure it worked in a proper manner;

(c) By failing to supply adequate warning either on the products themselves or the accompanying literature regarding the defective nature of the products;

(d) By placing or permitting the placement of its product into the stream of commerce when it knew or should have known that numerous persons would undertake to use the product and thereby subject themselves to unreasonable risk of injury;

(e) By placing and/or permitting the placement of its product into the stream of commerce when it knew or should have known of the defective nature of its product;

(f) By failing to properly test and inspect its product;

(g) By failing to employ corrective safety mechanisms to limit the defective nature of its product;

(h) By designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying a product which was unreasonably defective for its intended use;

(i) By failing to supply a product which was free of defect and was fit and safe in all respects for its intended and foreseeable uses to which it could be put;

(j) By designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the product in an unsafe condition;

(k) By designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the product in a dangerous condition for which the Defendants knew or should have known the users would not realize;

(l) By failing to keep abreast of the art and existing principles of science, engineering, design and/or the products industry and/or failing to apply such knowledge and principles to the design and manufacture of its product;

(m) By failing to keep abreast of and/or react appropriately to public, government and/or industry studies, information, documentation and recommendations, consumer complaints and reports and/or other information regarding the defective nature of its product;

(n) By disregarding the safety of users and consumers of its product to eliminate, rectify and/or warn of dangers and defects involving a substantial likelihood of injury;

(o) By failing to provide adequate instructions and warnings covering all known or reasonably foreseeable eventualities;

(p) By failing to recall, modify, and/or retrofit its product to make it safe for the end user;

(q) By failing to remove its product from the stream of commerce;

(r) By failing to appropriately test its product properly to determine its safety for use; and

(s) By failing to use due care under the circumstances.

Specifically, as to Defendant Durr:

(t)     By failing to place a guard on the suspension chain conveyor.

Specifically, as to Defendant Tzumi:

(u)     By failing to equip the cell phone charger with adequate anti-explosive properties and safety mechanisms.

34.     As a proximate cause of the Defendants' negligence, carelessness, recklessness, gross negligence and wantonness, individually and/or collectively, the Plaintiff has suffered significant injury and damages.

**FOR A SECOND CAUSE OF ACTION**
**(STRICT LIABILITY IN TORT)**
**AS TO DEFENDANTS DURR AND TZUMI**

35.     The Plaintiff would reallege and repeat paragraphs 1 through 34 as though fully set forth herein verbatim and would further allege:

36.     At all times mentioned in the Complaint the suspension chain conveyor and the cell phone charger were defective as to design, manufacture and warning when the products left the Defendants Durr and Tzumi's control, causing each product to be in a defective and unreasonably dangerous condition that made them unsafe for their reasonably foreseeable uses.

37.     Defendants Durr and Tzumi placed these unreasonably dangerous and defective products into the stream of commerce expecting them to reach users and consumers without substantial changes to their conditions, and these products did reach the ultimate users in substantially the same condition as when originally sold and/or distributed by the Defendants Durr and Tzumi.

38.     Defendants Durr and Tzumi each had a duty to design, test, manufacture, assemble, inspect, market and distribute their respective products so as not to subject purchasers and/or users to unreasonable risks of harm through products which were in a defective and unreasonably dangerous condition.

39. Defendants Durr and Tzumi each breached its duty to the Plaintiff and placed an unreasonably dangerous product into the stream of commerce in one or more of the following ways:

As to Defendant Durr:

(a) In designing, manufacturing, and/or distributing the suspension chain conveyor without a proper safety guard;

(b) In defectively designing the suspension chain conveyor to allow and/or require persons charged with cleaning the conveyors to be in the enclosed area while the unguarded conveyors are operating;

(c) In failing to test the suspension chain conveyor in a proper manner in like circumstances as to the Plaintiff so as to be able to design and engineer it with proper safety features; and

(d) In failing to provide adequate warnings of danger or instructions of dangers described above.

As to Defendant Tzumi:

(a) In designing, manufacturing, and/or distributing the cell phone charger without adequate anti-explosive properties and safety mechanisms;

(b) In failing to test the cell phone charger in a proper manner in like circumstances as to the Plaintiff so as to be able to design and engineer it with proper safety features; and

(c) In failing to provide adequate warnings of danger or instruction of dangers above described.

40. The consequential special and actual damages of the Plaintiff were directly and proximately caused by the defective and unreasonably dangerous condition of the products designed, manufactured and sold by Defendants Durr and Tzumi.

## FOR A THIRD CAUSE OF ACITON
### (BREACH OF WARRANTY)
### AS TO DEFENDANTS DURR AND TZUMI

41.     The Plaintiff would reallege and repeat paragraphs 1 through 40 as though fully set forth herein verbatim and would further allege:

42.     Defendants Durr and Tzumi warranted that the subject suspension chain conveyor and cell phone charger, respectively, were merchantable, safe for use and fit for the purposes to which they were designed, produced, sold and intended to be used through representations made in advertising and the sales process.

43.     Defendants Durr and Tzumi breached those warranties since the suspension chain conveyor and cell phone charger were not merchantable, safe for use, or fit for their particular purposes.

44.     As a direct and proximate result of Defendant Durr and Tzumi's breaches of express warranties, the Plaintiff was seriously injured and damaged.

## FOR A FOURTH CAUSE OF ACTION
### (BREACH OF WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE)
### AS TO DEFENDANTS DURR AND TZUMI

45.     The Plaintiff would reallege and repeat paragraphs 1 through 44 as though fully set forth herein verbatim and would further allege:

46.     In manufacturing, promoting, distributing, selling and otherwise placing the suspension chain conveyor and the cell phone charger into the stream of commerce, Defendants Durr and Tzumi impliedly warranted that their products were merchantable and fit for their particular purposes.

47.     The suspension chain conveyor and the cell phone charger were not merchantable and were unreasonably dangerous in their normal course of use.

48. The suspension chain conveyor and the cell phone charger were not fit for their particular purposes and had the capacity to be unsafe and defective.

49. The suspension chain conveyor and the cell phone charger were in substantially the same condition at the time that they were used in regard to the Plaintiff as when the defective products left the exclusive control of Defendants Durr and Tzumi.

50. As a direct and proximate result of Defendants Durr and Tzumi's breach of implied warranties of merchantability and fitness for a particular purpose, the Plaintiff was seriously injured and damaged

## FOR A FIFTH CAUSE OF ACTION
### (NEGLIGENCE, PER SE, VIOLATION OF 29 C.F.R. SECTION 1910.21 (c)(2)(i)) AS TO DEFENDANTS DURR AND BMW

51. The Plaintiff would reallege and repeat paragraphs 1 through 50 as though fully set forth herein verbatim and would further allege:

52. Pursuant to 29 C. F. R. Section 1920.219 (2)(i) all exposed parts of horizontal shafting seven (7) feet or less from floor or working platform, excepting runways used exclusively for oiling, or running adjustments shall be protected by a stationary casing enclosing shafting completely or by a trough enclosing sides and top or sides and bottom of shafting as location requires.

53. The Plaintiff alleges that the Defendant Durr, as manufacturer of the subject suspension chain conveyor, had a duty to design its product in compliance with said regulation, and that the Defendant BMW had a duty to provide a work environment to all who entered its premises so as not to expose them to undue risk of harm caused by machinery that was not in compliance with said regulation.

54. Defendants Durr and BMW had actual knowledge, must have known, should have known or had reason to know of the dangers associated with working in and with a dangerously

13

defective suspension chain conveyor that was unguarded and unsafe in or around the machine's drive shaft in violation of said regulation.

55. Defendant Durr violated said regulation by designing, manufacturing and/or distributing the subject suspension chain conveyor without a proper safety guard in or around the machine's drive shaft.

56. Defendant BMW violated said regulation by failing to furnish, and thereby exposing the Plaintiff with a suspension chain conveyor that was not guarded at or around the machine's drive shaft as required by said regulation.

57. As such, Defendants Durr and BMW individually and collectively exposed the Plaintiff to undue risk of serious injury contemplated by said regulation and which said regulation was promulgated to protect the general public, and the Plaintiff in particular, from.

58. As a direct and proximate result of Defendant Durr and Defendant BMW's violation of said regulation, the Plaintiff has suffered serious injury and damages.

59. The negligent, careless, grossly negligent, willful, wanton, reckless and unlawful acts and omissions of Defendant BMW, combining and concurring with the negligence, willfulness, wantonness, recklessness, unlawful acts, strict liability and breach of warranty by Defendants Durr and Tzumi, were the direct and proximate cause of the subject incident and resulting injuries and damage.

60. The Plaintiff is informed and believes that he is entitled to a judgment against the Defendants, one or all of them, in a sum sufficient to compensate him for his actual damages, for such punitive damages as may be assessed, for the costs of this action, and for such other and further relief as the court may deem just and proper.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, one or all of them, in a sum sufficient to compensate him for his actual damages, for such punitive damages as may be

assessed, for the costs of this action, and for such other and further relief as the Court may deem just and proper.

                          PHILPOT LAW FIRM, PA

                          BY:   s/Eric H. Philpot
                                   Eric H. Philpot, SC Bar #  7106
                                   Attorney for Plaintiff
                                   115 Broadus Avenue
                                   Greenville, SC 29601
                                   (864) 242-1366

Greenville, South Carolina

November 7, 2019